UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>TWO AN/PVS-14 MONOCULAR NIGHT VISION DEVICES, INCLUDING TWO HELMET MOUNT KITS, TWO WEAPON MOUNTS, AND TWO SHIPPING/STORAGE CASES; THREE PVS-14/6015-HPTN MONOCULAR NIGHT VISION DEVICES, INCLUDING THREE HELMET MOUNT KITS; AND TWO PVS7-3N NIGHT VISION DEVICES,<br><br>        Defendant. | Civil Action No. _____ |

**VERIFIED COMPLAINT**
**FOR FORFEITURE *IN REM***

COMES NOW, Plaintiff the United States of America, by and through the United States Attorney for the District of Columbia, and brings this verified complaint for forfeiture in a civil action *in rem* against the defendant property, namely: two AN/PVS-14 Monocular night vision devices (NVDs), including two helmet mount kits, two weapon mounts, and two shipping/storage cases; three PVS-14/6015-HPTN Monocular NVDs, including three helmet mount kits; and two PVS7-3N NVDs (collectively, the "Defendant Property"), and alleges as follows:

**NATURE OF ACTION AND THE DEFENDANT IN REM**

1. This *in rem* forfeiture action arises out of an investigation by the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), of a scheme to launder funds into the United States to purchase export controlled night vision devices and accessories from a U.S. manufacturer and illegally export them, through the use of false shipper

export documents, to end users in Japan in violation of the Arms Export Control Act, codified at 22 U.S.C. § 2278; 18 U.S.C. § 554; and the federal money laundering statutes, codified at 18 U.S.C. §§ 1956(a)(2)(A), (h).

2.  The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 as property constituting or derived from proceeds traceable to violations of 22 U.S.C. § 2778 and/or 18 U.S.C. § 554.  In addition, the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in, and traceable to money laundering violations, in violation of 18 U.S.C. §§ 1956(a)(2)(A), (h).

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355, and 28 U.S.C. § 1395(c).

4.  Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the District of Columbia.  The co-conspirators provided false export information to the Directorate of Defense Trade Controls ("DDTC"), which is located in Washington, D.C., to facilitate the illegal exportation of the Defendant Property to Japan.

5.  Venue is also proper pursuant to 28 U.S.C. § 1395(c) because the Defendant Property is currently held in the District of Columbia.

## STATUTORY FRAMEWORK

**I.  THE ARMS EXPORT CONTROL ACT ("AECA"), 22 U.S.C. § 2778**

6.  The AECA authorizes the President of the United States, among other things, to control the export of "defense articles."  22 U.S.C. § 2778(a)(1).  The AECA also gives the President the authority to designate items as "defense articles."  *Id.*  As a practical matter, that task is performed by the Department of State, which is located in Washington, D.C., with the

concurrence of the Department of Defense, in accordance with regulations that are promulgated by the DDTC. 22 C.F.R. §§ 120.1(a) and 120.2. The regulations promulgated by the DDTC are known as the International Traffic in Arms Regulations ("ITAR"), and specify which items are designated as defense articles. All defense articles are identified by category on the United States Munitions List ("USML").

7. Pertinent to this affidavit, Category XII of the USML addresses fire control, laser, imaging, and guidance equipment. This category includes imaging systems or end items, such as specialized binoculars, binoculars, monoculars, goggles, and head or helmet-mounted imaging systems.

8. In order to export any item determined to be on the USML, the exporter must register with the DDTC, and obtain an export license from the DDTC before the item can permanently leave the United States. *See* 22 U.S.C. § 2778(b)(2) and 22 C.F.R. § 123.1(a). DDTC personnel located in Washington, D.C., grant or deny these export licenses.

9. It is a violation for anyone to willfully violate any provision of 22 U.S.C. § 2778 or any rule or regulation issued under that section. *See* 22 U.S.C. § 2778(c). Specifically, it is a crime for any defense article exporter to willfully fail to obtain an export license before exporting a defense article to another country. *See* 22 U.S.C. § 2778(c) and 22 C.F.R. § 127.1(a)(1). Pursuant to the ITAR, it is a violation for a person to conspire to export or to cause to be exported any defense article without a license. *See* 22 C.F.R. § 127.1.

**II.    SMUGGLING GOODS, 18 U.S.C. § 554(a)**

10. At all times material to this investigation, 18 U.S.C. § 554(a) criminalized fraudulently or knowingly exporting or sending from the United States, or attempting to export or send from the United States, any merchandise, article, or object contrary to any law or regulation

of the United States, or the concealing, buying, or in any manner facilitating the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States. A violation of AECA would serve as the predicate "contrary to any law or regulation" as required by 18 U.S.C. § 554(a).

### III. MONEY LAUNDERING

11. 18 U.S.C. § 1956(h) criminalizes a conspiracy to violate § 1956.

12. 18 U.S.C. § 1956(a)(2)(A) (the international promotional money laundering statute) criminalizes transporting, transmitting, and transferring, and attempting to transport, transmit, and transfer a monetary instrument or funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity. Section 1956(a)(2)(A) does not require that the laundered transaction involve illicit funds, because the statute explicitly excludes the term proceeds. *See United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994).

13. Pursuant to 18 U.S.C. § 1956(c)(7), the term "specified unlawful activity," includes violations of 18 U.S.C. § 554 (relating to smuggling goods from the United States), and criminal violations of the AECA.

### IV. FORFEITURE

14. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 22 U.S.C. § 2778 and 18 U.S.C. § 554(a) are subject to forfeiture.

15. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or any property traceable to such property, is subject to civil forfeiture.

16. Forfeiture pursuant to violations of the above money laundering statute apply to a larger class of property than forfeiture under 18 U.S.C § 981(a)(1)(C), because such forfeitures are not limited to proceeds of the crime. Rather, forfeiture based on money laundering violations includes all property "involved in" the crime or the attempted crime, which can include "clean" or "legitimate" money that is commingled with "tainted" money derived from illicit sources.

## FACTS GIVING RISE TO FORFEITURE

17. On or about April 10, 2016, HSI was advised that a company based in Tokyo, Japan ("COMPANY 1"), had falsified the declared end user on three separate transactions to purchase export-controlled night vision devices and accessories from several companies based in the United States. The items purchased by COMPANY 1 in these three transactions, as further described below, comprise the Defendant Property.

18. On each of the DSP-83 Non-Transfer and Use Certificate (DSP-83) forms that COMPANY 1 submitted to DDTC, COMPANY 1 stated that the declared end user was the Japan Ground Self-Defense Force (JGSDF), which is the main branch of the Japanese military forces responsible for land-based military operations.

19. HSI subsequently confirmed that JGSDF was not involved in any of the purchase transactions, and that the signature for JGSDF on the DSP-83 forms had been forged.

20. HSI further confirmed that some of the purchased items had been confiscated by the Japanese Ministry of Defense, and others were stored in a warehouse owned by COMPANY 1. The President of COMPANY 1 agreed to voluntarily return all items to the United States government and signed abandonment forms prepared by HSI.

21. On or about October 7, 2016, HSI Tokyo shipped the Defendant Property to HSI Colorado Springs.

22. The Defendant Property is currently being held in Washington, D.C.

Purchase #1

23. On or about March 15, 2013, COMPANY 1 issued a purchase order to purchase two PVS7-3N NVDs for $6,384.00 U.S. dollars (Purchase # 1). The funds for Purchase #1 were subsequently wired into the United States.

24. The items purchased through Purchase #1 are ITAR-controlled items. According to the DDTC, these items are defense articles under Category XII(c) of the USML subject to DDTC's ITAR licensing jurisdiction. A DDTC export license is required to ship these items anywhere, including Japan.

25. On March 15, 2013, COMPANY 1 submitted a DSP-83 stating that COMPANY 1 was the foreign consignee, and that the end user was JGSDF. The DSP-83 was signed by the President of COMPANY 1 and a Chief Sergeant for JGSDF.

26. Based on the information included in the DSP-83, on September 10, 2013, DDTC issued a license (No. 050466862) to export the NVDs to JGSDF as the end user.

27. HSI subsequently learned that the items from Purchase #1 were confiscated and subsequently held at a Ministry of Defense warehouse in Saitama, Japan.

28. On or about July 7, 2016, COMPANY 1 agreed to voluntarily return the items from Purchase #1 to the United States government. COMPANY 1 signed abandonment documents prepared by HSI Tokyo.

Purchase #2

29. On or about May 12, 2014, COMPANY 1 issued a purchase order to purchase three PVS-14/6015-HPTN Monocular NVDs, including three helmet mount kits, for $8,232.00 (Purchase #2). The funds were subsequently wired into the United States to make this purchase.

30. The items purchased through Purchase #2 are ITAR-controlled items. According to the DDTC, these items are defense articles under Category XII(c) of the USML subject to DDTC's ITAR licensing jurisdiction. A DDTC export license is required to ship these items anywhere, including Japan.

31. On May 27, 2014, COMPANY 1 submitted a DSP-83 stating that COMPANY 1 was the foreign consignee, and that the end user was JGSDF. The DSP-83 was signed by the President of COMPANY 1 and a Chief Sergeant for JGSDF.

32. Based on the information included in the DSP-83, on September 9, 2014, DDTC issued a license (No. 050522953) to export the NVDs and helmet kits to JGSDF as the end user.

33. HSI subsequently learned that the items from Purchase #2 were being stored in a warehouse owned by COMPANY 1. On or about June 22, 2016, COMPANY 1 agreed to voluntarily return the items from Purchase #2 to the United States government. COMPANY 1 signed abandonment documents prepared by HSI Tokyo.

Purchase #3

34. On or about September 1, 2014, COMPANY 1 issued a purchase order to purchase two AN/PVS-14 Monocular NVDs, two helmet mount kits, two weapon mounts, and two shipping/storage cases for $7,538.00 (Purchase #3). The funds were subsequently wired into the United States to make this purchase.

35. The items purchased through Purchase #3 are ITAR-controlled items. According to the DDTC, these items are defense articles under Category XII(c) and (e) of the USML subject to DDTC's ITAR licensing jurisdiction. A DDTC export license is required to ship these items anywhere, including Japan.

36. On September 1, 2014, COMPANY 1 submitted a DSP-83 stating that COMPANY 1 was the foreign consignee, and that the end user was JGSDF. The DSP-83 was signed by the President of COMPANY 1 and a Chief Sergeant for JGSDF.

37. Based on the information included in the DSP-83, on October 10, 2014, DDTC issued a license (No. 050533659) to export the NVDs to JGSDF as the end user.

38. HSI subsequently learned that the items from Purchase #2 were being stored in a warehouse owned by COMPANY 1. On or about June 22, 2016, COMPANY 1 agreed to voluntarily return the items from Purchase #3 to the United States government. COMPANY 1 signed abandonment documents prepared by HSI Tokyo.

Summary of Facts Giving Rise to Forfeiture

39. COMPANY 1 and its co-conspirators provided falsified shippers export documentation to the DDTC in three separate purchase to illegally export the ITAR-controlled Defendant Property from the United States to Japan in violation of 22 U.S.C. § 2778 and 18 U.S.C. § 554.

40. COMPANY 1 and its co-conspirators laundered funds into the United States in order to illegally export the Defendant Property from the United States to Japan in violation of 18 U.S.C. §§ 1956(a)(2)(A), (h).

**<u>COUNT ONE -- FORFEITURE</u>**
**(18 U.S.C. § 981(A)(1)(C) AND 28 U.S.C. § 2461)**

41. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 38 above as if fully set forth herein.

42. COMPANY 1 and others, known and unknown, conducted the above identified illegal procurements, payments, and exports, in violation of the AECA, specifically 22 U.S.C. § 2778, and 18 U.S.C. § 554.

43. As such, the Defendant Property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, as property which constitutes or is derived from proceeds traceable to violations of 22 U.S.C. § 2778 and 18 U.S.C. § 554.

**<u>COUNT TWO -- FORFEITURE</u>**
**(18 U.S.C. § 981(A)(1)(A))**

44. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 38 above as if fully set forth herein.

45. COMPANY 1, and others, known and unknown, transmitted and transferred funds to a place inside the United States from or through a place outside the United States, to purchase the Defendant Property, with the intent to promote the carrying on of violations of 22 U.S.C. § 2778 and 18 U.S.C. § 554, in violation of 18 U.S.C. §§ 1956(a)(2)(A), (h).

46. As such, the Defendant Property is subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. §§ 1956(h), 1956(a)(2)(A), or as any property traceable to such property.

* * *

## **PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that notice issue on the Defendant Property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that a warrant of arrest *in rem* issue according to law; that judgment be entered declaring that the Defendant Property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: June __, 2017
      Washington, D.C.

                        Respectfully submitted,

                        CHANNING D. PHILLIPS,
                        United States Attorney

By:   Kyle T. Bateman
       Special Assistant United States Attorney
       Zia M. Faruqui
       Assistant United States Attorney
       555 Fourth Street, NW
       Washington, DC 20530
       (202) 252-7566 (main line)

*Attorneys for the United States of America*

## **VERIFICATION**

I, Stephen Babers, a Special Agent with the Department of Homeland Security, Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 27th day of June, 2017.


_____*/s/ Stephen Babers*_____
Stephen Babers
Special Agent
Homeland Security Investigations